```
 1                 UNITED STATES OF AMERICA

 2               EASTERN DISTRICT OF MICHIGAN

 3                    SOUTHERN DIVISION

 4  UNITED STATES OF AMERICA

 5       V                        Case No.  17-20465

 6  ABDUL HAQ - D- 4

 7           Defendant.

 8  _ _ _ _ _ _ _ _ _ _ _ _ _ _ _/

 9                    PLEA HEARING

10        BEFORE CHIEF JUDGE DENISE PAGE HOOD

11                 U.S. DISTRICT COURT

12       231 W. LAFAYETTE STREET, COURTROOM 730

13                   DETROIT, MICHIGAN

14               TUESDAY, OCTOBER 3, 2017

15  APPEARANCES:

16  FOR THE GOVERNMENT:         JACOB FOSTER,

17                              SHANKAR RAMAMURTHY,

18                              U.S. DEPARTMENT OF JUSTICE

19                              211 W. FORT ST.,

20                                 SUITE 2001

21                              DETROIT, MI 48226

22  FOR THE DEFENDANT:          KHALID A. KAHLOON,

23                              600 WEST MAIN STREET

24                                 SUITE 500

25                              LOUISVILLE, KY 40202
```

```
 1                    I N D E X                PAGE

 2   PLEA HEARING                                 3

 3

 4

 5

 6

 7

 8                    E X H I B I T S

 9

10   GOVERNMENT'S 4      RULE 11 PLEA AGREEMENT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    Tuesday, October 3, 2017

2                    Detroit, Michigan

3                    At approximately 4:00 p.m.

4                    THE CLERK:  The Court calls case number

5    17-20465, United States of America versus Abdul Haq.

6    Will Counsel please identify themselves for the record.

7                    MR. FOSTER:  Good afternoon, Your Honor.

8    Jacob Foster on behalf of the United States.

9                    THE COURT:  Good afternoon.

10                   MR. RAMAMURTHY:  Shankar Ramamurthy on

11   behalf of the United States on issues of forfeiture.

12                   MR. KAHLOON:  Good afternoon, Your Honor.

13   Khalid Kahloon representing Dr. Haq.

14                   THE COURT:  Good afternoon to everyone.

15                   And is it Dr. Haq?

16                   MR. KAHLOON:  Yes, Ma'am.

17                   THE COURT:  And we're here for him to enter

18   a plea of guilty; is that right?

19                   MR. KAHLOON: That is correct.

20                   THE COURT:  And is that your understanding,

21   too?

22                   MR. FOSTER:  Yes, Your Honor.

23                   THE COURT:  And I have a Rule 11 Plea

24   Agreement that's an advanced copy; is that correct?

25                   MR. FOSTER:  Yes, Your Honor.  I have the

1    originals to tender.

2              THE COURT:  So turn to pages 16 and 17 of

3    the originals and tell me if there are dates on those

4    pages?

5              MR. FOSTER:  Yes, Your Honor.

6              THE COURT:  There are on 16 and 17?

7              MR. FOSTER:  Yes.

8              THE COURT:  Very good.

9              You can come to the podium if you would.

10             And Dr. Haq, are you here to plead guilty?

11             THE DEFENDANT:  Yes.

12             THE COURT:  And can I issue, Counsel, the

13   standard oath?

14             MR. KAHLOON:  Yes, Your Honor.

15             THE COURT:  Please raise your right hand.

16             (Whereupon the Defendant was sworn by the

17   Court to tell the truth, the whole truth and nothing but

18   the truth.)

19             THE DEFENDANT:  I do.

20             THE COURT:  Thank you.

21             I'm going to ask you some questions about

22   the facts alleged in the Indictment and any answers you

23   may give may be used again you in a future prosecution

24   for perjury or false statement; do you understand that?

25             THE DEFENDANT:  Yes.

1                    THE COURT:  And what is your name for the

2    record?

3                    THE DEFENDANT:  Abdul Haq.

4                    THE COURT:  And do you understand you have a

5    constitutional right to remain silent and not

6    incriminate yourself?

7                    THE DEFENDANT:  Yes.

8                    THE COURT:  And do you wish to give up that

9    right for the purpose of pleading guilty?

10                   THE DEFENDANT:  Yes.

11                   THE COURT:  And I'm going to ask you a set

12   of questions, I ask them of everyone, okay?

13                   THE DEFENDANT:  Yes.

14                   THE COURT:  How old are you, sir?

15                   THE DEFENDANT:  I'm 71.

16                   THE COURT:  And how far did you go in

17   school?

18                   THE DEFENDANT:  What?

19                   THE COURT:  How far did you go in school?

20                   THE DEFENDANT:  I graduated in '69 and then

21   came here for my residency.

22                   THE COURT:  And when you say residency, you

23   mean residency --

24                   THE DEFENDANT:  Training.  Residency

25   training.

```
1              THE COURT:  In what area?

2              THE DEFENDANT:  Pediatrics.

3              THE COURT:  I'm sorry?

4              THE DEFENDANT:  Pediatrics.

5              THE COURT:  And when you say you graduated

6    in '69, was that from medical school?

7              THE DEFENDANT:  From medical school.

8              THE COURT:  And what medical school was it?

9              THE DEFENDANT:  It was King Edward Medical

10   College, Lahore, Pakistan.

11             THE COURT:  And let me ask you this, are you

12   able to read, write and understand English?

13             THE DEFENDANT:  Yes.

14             THE COURT:  And did you have a chance to

15   read through the Indictment against you?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And were you also able to read

18   through the Rule 11 Plea Agreement?

19             THE DEFENDANT:  Yes.

20             THE COURT:  And today did you take any

21   medication?

22             THE DEFENDANT:  Yes, blood pressure

23   medication.

24             THE COURT:  Does it impact your ability to

25   think and reason?
```

```
1              THE DEFENDANT:  No, I don't think so.
2              THE COURT:  And did you take it today as you
3    usually take it?
4              THE DEFENDANT:  Yes.
5              THE COURT:  And did you use any drugs or
6    alcohol today?
7              THE DEFENDANT:  No.
8              THE COURT:  Do you understand you have a
9    right to have an attorney with you at every stage of the
10   proceedings and if you cannot afford one, I would
11   appoint one for you at no cost to you.
12             THE DEFENDANT:  Yes, I have attorney.
13             THE COURT:  You have your attorney with you
14   today?
15             THE DEFENDANT:  Yes.
16             THE COURT:  And has he been your attorney
17   throughout these proceedings?
18             THE DEFENDANT:  Yes.
19             THE COURT:  Were you the attorney at the
20   arraignment?
21             MR. KAHLOON:  No, Your Honor.
22             THE COURT:  Who was at arraignment?
23             THE DEFENDANT:  Paul Stablein.
24             MR. KAHLOON:  I substituted in, Your Honor.
25   He was the attorney at the arraignment.
```

```
 1                    MR. FOSTER:  Paul Stablein, Your Honor.

 2                    THE COURT:  And then you were hired

 3     separately, is it Mr. Kahloon?

 4                    MR. KAHLOON:  Yes, Ma'am.

 5                    THE COURT:  And when did you first appear in

 6     the case?

 7                    MR. KAHLOON:  Your Honor, I filed an

 8     appearance probably a couple months ago.  In July.

 9                    THE COURT:  After the arraignment?

10                    MR. KAHLOON:  That's correct, Your Honor.

11                    THE COURT:  And did Mr. Kahloon represent

12     you during the negotiations of the plea agreement?

13                    THE DEFENDANT:  Yes.

14                    THE COURT:  And are you satisfied with his

15     advice and services so far?

16                    THE DEFENDANT:  Yes.

17                    THE COURT:  Did you talk about pleading

18     guilty with him?

19                    THE DEFENDANT:  Yes.

20                    THE COURT:  And did he go over the Rule 11

21     Plea Agreement with you?

22                    THE DEFENDANT:  Yes.

23                    THE COURT:  And are you satisfied --  well,

24     did he explain your constitutional rights to you?

25                    THE DEFENDANT:  Yes.
```

```
 1                    THE COURT:  I'm going to explain those
 2    rights again and if you have any questions, this is the
 3    time to ask those questions, okay.
 4                    THE DEFENDANT:  All right.
 5                    THE COURT:  Do you understand you have a
 6    constitutional right to plead not guilty and to have a
 7    trial?
 8                    THE DEFENDANT:  Yes.
 9                    THE COURT:  And do you understand you will
10    give up that rights if you plead guilty?
11                    THE DEFENDANT:  Yes.
12                    THE COURT:  And do you understand that you
13    could have a trial before a jury?
14                    THE DEFENDANT:  Yes.
15                    THE COURT:  And do you know what a jury is?
16                    THE DEFENDANT:  Yes.
17                    THE COURT:  And do you understand that
18    you're presumed to be innocent until you're proven
19    otherwise?
20                    THE DEFENDANT:  Yes.
21                    THE COURT:  Do you understand that the
22    Government has the burden of proving your guilt beyond a
23    reasonable doubt?
24                    THE DEFENDANT:  Yes.
25                    THE COURT:  And do you understand that means
```

1   that you have the right to have their witnesses come

2   into open court and testify in open court against you?

3                    THE DEFENDANT:  Yes.

4                    THE COURT:  And do you understand you and

5   your attorney could cross exam or question anybody that

6   was called by the Government as a witness?

7                    THE DEFENDANT:  Yes, Your Honor.

8                    THE COURT:  And do you understand that if

9   you wanted to you could present your own witnesses at

10  trial?

11                   THE DEFENDANT:  Yes.

12                   THE COURT:  And do you understand if they

13  would not voluntarily appear that I would order them to

14  court for you?

15                   THE DEFENDANT:  Yes.

16                   THE COURT:  And do you also understand that

17  you have the right to remain silent during your trial?

18                   THE DEFENDANT:  Yes.

19                   THE COURT:  And do you understand your

20  silence could not be used against you by the Judge or by

21  the jury?

22                   THE DEFENDANT:  Yes.

23                   THE COURT:  And likewise do you understand

24  that if you wanted to testify, we would give you a

25  chance to testify in open court?

1                    THE DEFENDANT:  Yes.

2                    THE COURT:  And do you understand you will

3      give up all those rights if you plead guilty?

4                    THE DEFENDANT:  Yes.

5                    THE COURT:  And you're going to plead guilty

6      to Count 1 of the Indictment which is Conspiracy to

7      Commit Health Care Fraud?

8                    THE DEFENDANT:  Yes.

9                    THE COURT:  And do you understand that

10     carries a maximum penalty of 10 years in prison and a

11     maximum fine of $250,000 or twice the gain or loss?

12                   THE DEFENDANT:  Yes.

13                   THE COURT:  And Count 1 is a conspiracy to

14     commit health care fraud against the Medicare program;

15     is that correct?

16                   THE DEFENDANT:  Yes.

17                   THE COURT:  And this Indictment alleges

18     that, and I'm going to start on page 10, and it alleges

19     that you operated an operation called Global Quality

20     Aqua Therapy, Tri-County Physicians, Tri-State

21     Physicians, New Center Medical, National Laboratories

22     and Tri-County Wellness collectively referred to as

23     Tri-County Network.

24                   And in Count 1, which is the conspiracy, it

25     alleges that from 2008 and continuing through the date

1    of the Indictment that you along with others did

2    willfully and knowingly conspire, combine, confederate

3    and agree with each other and others known and unknown

4    to the grand jury including Home Health Agency Owner 1,

5    Diagnostic Company 1 and Physician 1 to commit certain

6    offense against the United States; namely, to knowingly

7    and willfully execute a scheme and artifice to defraud a

8    health care benefit program affecting commerce, that

9    being the Medicare program.  And to obtain by means of

10   materially false and fraudulent pretenses,

11   representations and promises, money and property owned

12   by and under the control and custody of said health care

13   benefit program in connection with the delivery of and

14   payment for health care benefits, terms and services, in

15   violation of federal law.

16           Is that a sufficient statement of the

17   offense?

18           MR. FOSTER:  It is, Your Honor.  Just to

19   correct one thing.  It's the Defendant Mashiyat Rashid

20   who owns and operates the clinics that you listed.

21           Dr. Haq, on page 10, at paragraph 30, he was

22   a physician who was enrolled as a participating provider

23   for Aqua Therapy, Tri-County Physicians --

24           THE COURT:  I'm sorry.  It is in paragraph

25   30, which I intended to read 27, 28, 29 and 30, but I

1    thought I could just read 27.  But 30 alleges that he

2    was a physician licensed in the state of Michigan,

3    enrolled as a participating provider with Medicare for

4    Aqua Therapy, Tri-County Physicians and Tri-State

5    Physicians which are part of the Tri-County Network

6    organization; is that correct?

7                  THE DEFENDANT:  Yes.

8                  THE COURT:  Is that now a sufficient reading

9    of the claims against him?

10                 MR. FOSTER:  Yes, Your Honor.  And including

11   by reference Part C of the Rule 11 which begins on page

12   2.

13                 THE COURT:  And I would also note that he is

14   also specifically mentioned in paragraphs 46, 47 and 48

15   of the -- and 51 of the Indictment; is that correct?

16                 THE DEFENDANT:  Yes.

17                 THE COURT:  Those are all the paragraphs I

18   think he is mentioned in in Count 1 Counsel, do you

19   agree?

20                 MR. FOSTER:  And 52, 56 and 57 as well, Your

21   Honor.

22                 THE COURT:  And those are all related to

23   Count 1?

24                 MR. FOSTER:  Yes.

25                 THE COURT:  Do you want me to read them,

1    Counsel?

2              MR. KAHLOON:  No, Your Honor.

3              THE COURT:  How about you, Dr. Haq, would

4    you like me to read those specific paragraphs?

5              THE DEFENDANT:  No, Your Honor.

6              THE COURT:  And you, as I indicated,

7    understand that the maximum penalty is 10 years in

8    prison and the maximum fine is $250,000?

9              THE DEFENDANT:  Yes, I understand, Your

10   Honor.

11             THE COURT:  Are you on probation, parole or

12   do you have any other inmate status?

13             THE DEFENDANT:  I'm on probation for my

14   license.

15             THE COURT:  You're on probation for your

16   license.  Is that through the licensing agency, not

17   through a court?

18             THE DEFENDANT:  Licensing agency, not

19   through a court.

20             THE COURT:  And let's hear the pertinent

21   parts of the Rule 11 Plea Agreement, Counsel.

22             MR. FOSTER:  Yes, Your Honor.   The

23   Defendant, as you indicated, will enter a plea of guilty

24   to Count 1 of the Indictment.

25             There are no sentencing guidelines disputes.

1    The Defendant's guideline range is 97 to 121 months

2    except if the Court finds that the Defendant's Criminal

3    History Category is higher than reflected on the

4    attached worksheet or the offense level should be higher

5    because after pleading guilty Defendant made a false

6    statement, Section 3 of the Rule 11 provides that the

7    Court will impose a sentence pursuant to 18 U.S.C.

8    Section 3553 and in doing so must consider the

9    sentencing guideline range.

10                In terms of imprisonment, the sentence in

11   this case may not exceed the top of the sentencing

12   guideline range recommended by the Government as

13   previously described.

14                In terms of supervised release, there is no

15   agreement on supervised release.

16                In terms of special assessment, the

17   Defendant will pay a special assessment of $100.00.

18                Fine, as the Court previously indicated, the

19   Court may impose a fine in any amount up to $250,000 or

20   twice the pecuniary gain or loss.

21                The parties agree on restitution that the

22   Court shall order restitution to the U.S. Department of

23   Health and Human Services in the amount of

24   $6,927,046.12.

25                Forfeiture, the Defendant has agreed to

1   forfeit to the United States his interest in all

2   property real or personal which constitutes or is

3   derived directly or indirectly from gross proceeds

4   traceable to the conspiracy alleged in Count 1 of the

5   Indictment.

6           He also agrees to forfeit all funds subject

7   to civil forfeiture, has property involved in or

8   traceable to property involved in money laundering.

9           And there are specific items of forfeiture

10  that the Defendant has agreed to which are all funds on

11  deposit and all other items of value in the University

12  Bank Islamic Profit Sharing account number 1083155;

13          All funds on deposit and all other items of

14  value in Wells Fargo Advisors account number 3282-3501;

15          All funds on deposit and all other items of

16  value in the Wells Fargo Advisors account number

17  37164947;

18          And all funds on deposit and all other items

19  of value in Wells Fargo Advisors account number

20  4210-8906.

21          And the Defendant has agreed to a forfeiture

22  money judgment in the amount of $6,927,046.12.

23          (The following portion ordered sealed by the

24  Court.)

25          The Rule 11 Agreement provides for the use

1    of a withdrawn guilty plea.  If the Court allows the

2    Defendant to withdraw his guilty plea, the Defendant

3    waives his rights under Rule 410 and the Government may

4    use his guilty plea and any statement made under oath at

5    the plea hearing and the factual basis statement in the

6    plea agreement against him in any proceeding.

7              The agreement also provides that the

8    Defendant understands and acknowledges that as a result

9    of his plea, the Defendant will be excluded from

10   Medicare, Medicade and all federal health care programs.

11             Provision number 7 is the right to withdraw.

12   The Government may withdraw if the Court finds the

13   correct guideline range to be different than is

14   determined by Paragraph 2-B.

15             The Defendant may withdraw only if the Court

16   decides to impose a sentence higher than the maximum

17   allowed by Part 3 of the agreement.

18             Section 8 of the agreement is an appellate

19   waiver.  The Defendant waives any right he may have to

20   appeal his conviction on any grounds.

21             Clause 9 are the consequences of withdrawal

22   of the guilty plea.  The Defendant is allowed to

23   withdraw his guilty plea or if any conviction entered

24   pursuant to this agreement is vacated, the Court shall

25   on the Government's request reinstate any charges that

1    were dismissed as part of the agreement.

2                    In terms of the parties, the agreement does

3    not bind any agency except the United States Department

4    of Justice, Fraud Section, and the U.S. Attorney's

5    Office for the Eastern District of Michigan.

6                    (The following portion ordered sealed by the

7    Court.)

8                    THE COURT:  Is there any part, Mr. Kahloon,

9    of the written Rule 11 Plea Agreement that has not been

10   read that you would like to be part of the oral record?

11                   MR. KAHLOON:  No, Your Honor.

12                   THE COURT:  Dr. Haq, is that your agreement

13   with the Government?

14                   THE DEFENDANT:  Yes.

15                   THE COURT:  Can I see the signature pages

16   that are complete?  Is it marked as an exhibit?

17                   MR. FOSTER:  It is marked as Government's

18   Exhibit D-4.

19                   THE COURT:  That's fine.  You may bring it

20   up.

21                   Is that your agreement with the Government?

22                   THE DEFENDANT:  Yes.

23                   THE COURT:  Has anyone on behalf of the

24   Government, either the Government's attorney or any

25   agent or anyone else promised you anything else?

1                    THE DEFENDANT:  No.

2                    THE COURT:  Has anyone on behalf of your

3    defense counsel promised you anything other than what is

4    included in the Rule 11 Plea Agreement?

5                    THE DEFENDANT:  No.

6                    THE COURT:  And has anyone forced or

7    threatened you to get you to plead guilty?

8                    THE DEFENDANT:  No.

9                    THE COURT:  Has anyone forced or threatened

10   anyone close to you to get you to plead guilty?

11                   THE DEFENDANT:  No.

12                   THE COURT:  And are you pleading guilty

13   freely and voluntarily?

14                   THE DEFENDANT:  Yes.

15                   THE COURT:  So let's see, on page 17, is

16   that your signature?

17                   THE DEFENDANT:  Yes.

18                   THE COURT:  And Mr. Kahloon, is that your

19   signature also?

20                   MR. KAHLOON:  Yes, Your Honor.

21                   THE COURT:  And let's see, Mr. Foster, is

22   that your signature?

23                   MR. FOSTER:  Yes, Your Honor.

24                   THE COURT:  And do you know that to be the

25   signature of Ms. Dubal and Mr. Pratt?

1              MR. FOSTER:  Yes, I do, and those are their

2     signatures.

3              THE COURT:  So you can tell me, I suppose

4     you have the authority to fully put the date on here,

5     right?

6              MR. FOSTER:  Yes, Your Honor.

7              THE COURT:  Would you do that for me,

8     please.

9              MR. FOSTER:  Sure.

10             May I approach?

11             THE COURT:  Yes.

12             I would also note -- are there signatures on

13     the other agreement?

14             MR. FOSTER:  Yes, Your Honor.

15             (The following portion ordered sealed by the

16     Court.)

17             Are there signatures on that one that you

18     have down there?

19             MR. FOSTER:  Yes, there are.

20             THE DEFENDANT:  Yes, my signature.

21             THE COURT:  And you know those to be the

22     Government's signatures; is that correct?

23             MR. FOSTER:  Yes, that is correct.

24             THE COURT:  And that agreement I'm ordering

25     to be sealed and the portion of the record pertaining to

1  it also are sealed, okay.

2           At the request of the Government; is that

3  agreeable to you?

4           MR. KAHLOON:  Of course.

5           THE COURT:  And it does not reflect any

6  specific amount of reduction; is that correct?

7           MR. KAHLOON:  That is correct, Your Honor.

8           THE COURT:  Mr. Foster, I would also note

9  that the Rule 11 Plea Agreement provides for notes that

10  the guideline range for this is 97 to 121 months.  And I

11  can assure you that the Probation Department -- is that

12  right, on page?

13           MR. FOSTER:  That is correct, Your Honor.

14           THE COURT:  And I'm sure that the Probation

15  Department is going to tell us that the guideline range

16  will be 97 to 120 months because the maximum penalty is

17  10 years in prison; is that right?

18           MR. FOSTER:  That is correct, Your Honor.

19           THE COURT:  You all understand that as well?

20           THE DEFENDANT:  Yes.

21           THE COURT:  So your agreement not to exceed

22  the top of the guidelines the Court would take as an

23  agreement not to exceed 120 months.

24           MR. FOSTER:  Yes, that's correct, Your

25  Honor.

1                    THE COURT:  Very good.

2                    Are you satisfied I have complied with the

3       rule so far, Mr. Kahloon?

4                    MR. KAHLOON:  Yes, Your Honor.

5                    THE COURT:  What about you, Mr. Foster?

6                    MR. FOSTER:  Yes, I am, Your Honor.

7                    THE COURT:  Dr. Haq, what did you do to be

8       guilty?

9                    MR. KAHLOON:  Your Honor, could you repeat

10      your question.

11                   THE COURT:  What did you do to be guilty of

12      conspiracy to commit health care fraud in Count 1 of the

13      Indictment?

14                   THE DEFENDANT:  Work in the payment in the

15      clinic under Mas administered pain medicines which were

16      not really indicated.  And also pain injections which

17      were really not indicated.  So that's the main work

18      which was done by me.

19                   THE COURT:  And then did you bill Medicare

20      for them?

21                   THE DEFENDANT:  Yeah.  The owner of the

22      clinic at Tri-County he was the one who was the --

23      managing the business.  And so he billed and we got

24      whatever agreement we had between us.

25                   THE COURT:  And were the people involved the

1   people that are noted in the Indictment?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And when did this happen?

4              THE DEFENDANT:  This happened, actually had

5   been happening since 2008 with the Aqua Therapy and then

6   the Tri-County Physicians opened.

7              THE COURT:  And so that was from sometime in

8   2008 until sometime in 2017?

9              THE DEFENDANT:  Right.  Up to, yeah.

10             THE COURT:  Up to the date of the

11  Indictment?

12             THE DEFENDANT:  Just before, because I left

13  the -- that group in January.

14             THE COURT:  And where did this occur?

15             THE DEFENDANT:  It occurred initially at

16  3800 Woodward Avenue and then it was the office changed

17  to West Grand Boulevard.  I think the address is 3011

18  West Grand Blvd., Room 305.

19             THE COURT:  And that all would be in the

20  City of Detroit?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Turn to page 3 of the Rule 11

23  Plea Agreement, please.  And you'll see there a

24  paragraph -- I'm sorry, turn to page 2.  You'll see a

25  paragraph that says, Factual Basis for Guilty Plea, and

1   it continues over until I believe page 5.  And would you

2   read that to yourself because then I'm going to ask you

3   some questions about it.

4               No, no, just read it to yourself.

5               (Whereupon the Defendant reviews the

6   document.)

7               THE DEFENDANT:  Yes, Your Honor, I read

8   that.

9               THE COURT:  Is that an accurate factual

10  basis for your involvement in this conspiracy?

11              THE DEFENDANT:  Yes, Your Honor.

12              THE COURT:  Are you satisfied, Counsel, or

13  do you have any questions, Mr. Foster?

14              MR. FOSTER:  I'm satisfied.

15              THE COURT:  Counsel, are you satisfied?

16              MR. KAHLOON:  Yes, Your Honor.

17              THE COURT:  Then I find that Dr. Haq's plea

18  is freely and voluntarily made, that he understands his

19  constitutional rights and has made out the elements of

20  the offense in open court and also accepts the factual

21  basis of the Rule 11 Plea Agreement.  And therefore, I

22  will accept his plea of guilty and the Rule 11 Plea

23  Agreement.

24              You understand that the Rule 11 Plea

25  Agreement also contains that forfeiture information that

1   is listed on page --

2                 MR. KAHLOON:  Eight.

3                 THE COURT:  And continued on 9, 10 and 11, I

4   believe.  Do you understand that, Dr. Haq?

5                 THE DEFENDANT:  Yes.

6                 THE COURT:  I would note, Counsel, that you

7   have listed as restitution some $6,927,046.12, but over

8   here on page 5 you have listed that there were false

9   submissions of $19,322,846; is that correct?

10                MR. FOSTER:  That is correct.

11                THE COURT:  But you only intend the

12  restitution of 6 point 9; is that right?

13                MR. FOSTER:  That's correct.

14                THE COURT:  Is the 19 million the loss

15  amount or is the 6 point 9 going to be the loss amount?

16                MR. FOSTER:  Just one second, Your Honor.

17                Yes, the 19 million is the loss amount for

18  purposes of intended loss or represents the amount

19  billed to the Medicare program whereas the 6 million --

20                THE COURT:  -- point 9 is the actual amount

21  paid out by Medicare?

22                MR. FOSTER:  That is correct, Your Honor.

23                THE COURT:  You understand that as well, Mr.

24  Kahloon?

25                MR. KAHLOON:  We do, Your Honor.

1                    THE COURT:  And Dr. Haq, do you understand

2    that also?

3                    THE DEFENDANT:  Yes, Your Honor.

4                    THE COURT:  And you all don't dispute those

5    amounts?

6                    THE DEFENDANT:  No.

7                    THE COURT:  Very well, then I'm accepting

8    his plea of guilty and the Rule 11 Plea Agreement and

9    let's set it for a sentencing.

10                   THE CLERK:  May 24th, 2018 at 2 p.m.

11                   THE COURT:  What day of the week is that?

12                   THE CLERK:  That is a Thursday.

13                   THE COURT:  At 2 p.m.?

14                   THE CLERK:  Yes.

15                   THE COURT:  Thank you very much.  Anything

16   else that we need to take up today?

17                   MR. FOSTER:  No, Your Honor.

18                   MR. KAHLOON:  No.

19                   THE COURT:  You're going to submit some kind

20   of preliminary order of forfeiture or have you already

21   done that?

22                   MR. RAMAMURTHY:  We have not done that, Your

23   Honor, and we will do that shortly.

24                   THE COURT:  Very good.

25                   And your client is on pretrial release; is

1    that correct?

2                    MR. KAHLOON:  Yes, Your Honor.

3                    THE COURT:  Those conditions continue until

4    the time you appear for sentencing, all right?

5                    THE DEFENDANT:  Okay.

6                    THE COURT:  And you also will have to be

7    interviewed for a presentence report by the Probation

8    Department, and when you're interviewed, your counsel

9    can go with you, all right?

10                   THE DEFENDANT:  Okay.  Yes.

11                   THE COURT:  Do you have any questions?

12                   THE DEFENDANT:  No.

13                   THE COURT:  Thank you very much and court's

14   in recess.

15                   (Proceedings concluded at 4:39 p.m.)

16                   *  *  *  *  *  *  *  *

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, CHERYL E. DANIEL, Official Federal Court Reporter, after being first duly sworn, say that I stenographically reported the foregoing proceedings held on the day, date, time and place indicated.  That I caused those stenotype notes to be translated through Computer Assisted Transcription and that these pages constitute a true, full and complete transcription of those stenotype notes to the best of my knowledge and belief.

I further certify that I am not of counsel nor have any interest in the foregoing proceedings.


/C/ CHERYL E. DANIEL,



CHERYL E. DANIEL,

FEDERAL OFFICIAL COURT REPORTER


DATED:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25