UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

     v.

D-1 MASHIYAT RASHID
D-3 SPILIOS PAPPAS
D-5 JOSEPH BETRO
D-6 TARIQ OMAR
D-7 MOHAMMED ZAHOOR

          Defendants.
_____/

Case No: 17-20465

Hon. Denise Page Hood

VIO: 18 U.S.C. § 1349
      18 U.S.C. § 1347
      18 U.S.C. § 371
      42 U.S.C. § 1320a-
      7b(b)(2)(A)-(B)
      18 U.S.C. § 1957
      18 U.S.C. § 2

## AMENDED SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

FILED USDC - CLRK DET
2020 JAN 2 PM3:15

### General Allegations

At all times relevant to this Superseding Indictment:

### The Medicare Program

1.    The Medicare program was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.      Medicare has four parts: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D).

4.      Specifically, Part A of the Medicare program covered inpatient hospital services, home health and hospice care, and skilled nursing and rehabilitation.

5.      Part B of the Medicare program covered the cost of physicians' services, medical equipment and supplies, and diagnostic laboratory services. Specifically, Part B covered medically necessary physician office services, outpatient physical therapy services, nerve conduction testing, ultrasounds, and nerve block injections, including facet joint injections. Part B also covered services that were provided in connection with a laboratory testing facility, including urine drug testing.

6.      National Government Services ("NGS") administered the Medicare Part A program for claims arising in the State of Michigan. Wisconsin Physicians Service ("WPS") administered the Medicare Part B program for claims arising in the State of Michigan. CGS Administrators LLC ("CGS") administered the Medicare Part B program for claims arising in the State of Ohio. CMS contracted with NGS to receive, adjudicate, process, and pay Part A claims. CMS contracted with WPS and CGS to receive, adjudicate, process, and pay certain Part B claims, including

medical services related to physician office services, outpatient physical therapy services, and nerve block injections, including facet joint injections, as well as services that were provided in connection with a laboratory testing facility, including urine drug testing.

7.    TrustSolutions LLC was the Program Safeguard Contractor for Medicare Part A and Part B in the State of Michigan until April 24, 2012, when it was replaced by Cahaba Safeguard Administrators LLC as the Zone Program Integrity Contractor ("ZPIC").  Cahaba was replaced by AdvancedMed in May 2015.

8.    The Program Safeguard Contractor or ZPIC is a contractor that investigates fraud, waste, and abuse.  As part of an investigation, the Program Safeguard Contractor or ZPIC may conduct a clinical review of medical records to ensure that payment is made only for services that meet all Medicare coverage and medical necessity requirements.

9.    Payments under the Medicare program were often made directly to a provider of the goods or services, rather than to a Medicare beneficiary.  This payment occurred when the provider submitted the claim to Medicare for payment, either directly or through a billing company.

10.    Upon certification, the medical provider, whether a clinic, physician, or other health care provider that provided services to Medicare beneficiaries, was able

to apply for a Medicare Provider Identification Number ("PIN") for billing purposes. In its enrollment application, a provider was required to disclose to Medicare any person or company who held an ownership interest of 5% or more or who had managing control of the provider. A health care provider who was assigned a Medicare PIN and provided services to beneficiaries was able to submit claims for reimbursement to the Medicare contractor/carrier that included the PIN assigned to that medical provider.

11.     A Medicare claim was required to set forth, among other things, the beneficiary's name, the date the services were provided, the cost of the services, and the name and identification number of the physician or other health care provider who had ordered the services. When an individual medical provider was associated with a clinic and medically necessary services were provided at that clinic's location, Medicare Part B required that the individual provider numbers associated with the clinic be placed on the claim submitted to the Medicare contractor.

12.     By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its

4

authorized agents and contractors.  Health care providers were given and provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations.

13.     Health care providers could only submit claims to Medicare for reasonable and medically necessary services that they rendered.  Medicare would not pay claims procured through kickbacks and bribes.

14.     Medicare regulations required health care providers enrolled with Medicare to maintain complete and accurate patient medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the physician.  Medicare requires complete and accurate patient medical records so that Medicare may verify that the services were provided as described on the claim form.  These records were required to be sufficient to permit Medicare, through WPS and other contractors, to review the appropriateness of Medicare payments made to the health care provider.

15.     Under Medicare Part B, physician office visit services, outpatient physical therapy services, nerve conduction, and nerve block injections, including facet joint injections, were required to be reasonable and medically necessary for the treatment or diagnosis of the patient's illness or injury.  Individuals providing these services were required to have the appropriate training, qualifications, and licenses

to provide such services. Providers were required to: (1) document the medical necessity of these services; (2) document the date the service was performed; (3) identify the provider who performed the service; and (4) identify the clinic, physician office, or group practice where the provider provided the service. Providers conveyed this information to Medicare by submitting claims using billing codes and modifiers. To be reimbursed from Medicare for physician office visit services, outpatient physical therapy services, nerve conduction, and nerve block injections, including facet joint injections, the services had to be reasonable, medically necessary, documented, and actually provided as represented to Medicare. Providers were required to maintain patient records to verify that the services were provided as represented on the claim form to Medicare. When an individual medical provider was associated with a clinic, Medicare Part B required that the individual provider number associated with the clinic be placed on the claim submitted to the Medicare contractor.

16. Under Medicare Part B, for a laboratory to properly bill and be paid by Medicare for laboratory testing, including urine drug testing, the patient must, among other things, qualify for the testing, including urine drug testing, under Medicare's established rules and regulations. The testing also must be rendered according to Medicare's rules and regulations, and certain documents must be completed before a claim is submitted for reimbursement to Medicare.

17.    For a laboratory to properly bill and be paid by Medicare for urine drug testing, the urine drug testing must be both reasonable and medically necessary. Urine screenings can be "qualitative" and used to determine the presence or absence of substances, or the screenings can be "quantitative" and used to provide a numerical concentration of a substance. Medicare limits the allowed purposes of quantitative screenings. One such accepted purpose would be if a patient tested negative for a prescribed medication during a qualitative screening, but the patient insisted s/he was taking the medication. A laboratory may then perform a quantitative screening to evaluate or confirm the findings of the qualitative testing. The same is true if a patient tested positive for a non-prescribed medication/drug during qualitative testing which s/he insisted had not been used. However, regular, routine, or recreational drug screenings, however, are not reasonable or medically necessary. Further, the patient's medical record must include documentation that fully supports the reasonableness of and medical necessity for the urine drug testing.

18.    Under Medicare Part A and Part B, home health care services were required to be reasonable and medically necessary to the treatment of the patient's illness or injury. Reimbursement for home health care services required that a physician certified the need for services and established a Plan of Care. Home health care services that were not certified by a physician or were not provided as represented were not reasonable and necessary. Medicare Part B covered the costs

of physicians' services, including physician home visits, physician certification and recertification of home health care services, and physician supervision of home health care services. Generally, Medicare Part B covered these costs only if, among other requirements, they were medically necessary, ordered by a physician, and not induced by the payment of remuneration.

19.     Medicare coverage for home health care services required that the following qualifying conditions, among others, be met: (a) the Medicare beneficiary is confined to the home; (b) the beneficiary needs skilled nursing services, physical therapy, or occupational therapy; (c) the beneficiary is under the care of a qualified physician who established a written Plan of Care for the beneficiary, signed by the physician and by a Registered Nurse ("RN"), or by a qualified physical therapist if only therapy services are required from the home health agency; (d) skilled nursing services or physical therapy services are provided by, or under the supervision of, a licensed RN or physical therapist in accordance with the Plan of Care; and (e) the services provided are medically necessary.

20.     To receive reimbursement for a covered service from Medicare, a provider must submit a claim, either electronically or using a form (*e.g.*, a CMS-1500 form or UB-92), containing the required information appropriately identifying the provider, patient, and services rendered, among other things.

### The Tri-County Network Physician Businesses

21.     Global Quality Inc. ("Global Quality") was a Michigan corporation doing business at 3800 Woodward Ave., Ste. 1100, Detroit, Michigan.   Global Quality was enrolled as a participating provider with Medicare and submitted claims to Medicare.

22.     Aqua Therapy and Pain Management, Inc. ("Aqua Therapy") was a Michigan corporation doing business at 3011 West Grand Blvd., Ste. 305, Detroit, Michigan.   Aqua Therapy was enrolled as a participating provider with Medicare and submitted claims to Medicare.

23.     Tri-County Physician Group, P.C. ("Tri-County Physicians") was a Michigan corporation doing business at 3800 Woodward Ave., Ste. 1100, Detroit, Michigan, 3011 West Grand Blvd., Ste. 305 & 307, Detroit, Michigan, and 24001 Orchard Lake Rd., Ste. 140A, Farmington, Michigan.   Tri-County Physicians was enrolled as a participating provider with Medicare and submitted claims to Medicare.

24.     Tri-State Physician Group, P.C. ("Tri-State Physicians") was a Michigan corporation doing business at 3011 West Grand Blvd., Ste. 306, Detroit, Michigan, 24001 Orchard Lake Rd., Ste. 140A, Farmington, Michigan, and 2100 W. Alexis Rd., Ste. B3, Toledo, Ohio.   Tri-State Physicians was enrolled as a participating provider with Medicare and submitted claims to Medicare.

25.     New Center Medical, P.C. ("New Center Medical") was a Michigan corporation doing business at 3011 West Grand Blvd., Ste. 308, Detroit, Michigan. New Center Medical was enrolled as a participating provider with Medicare and submitted claims to Medicare.

## The Tri-County Network Laboratories

26.     National Laboratories, Inc. ("National Laboratories") was a Michigan corporation doing business at 3011 West Grand Blvd., Ste. 310, Detroit, Michigan and 2100 West Alexis Rd., Ste. B-1, Toledo, Ohio.  National Laboratories was enrolled as a participating provider with Medicare and submitted claims to Medicare.

27.     Nat Lab, Inc. ("Nat Lab") was a Michigan corporation doing business at 3011 West Grand Blvd., Ste. 309, Detroit, Michigan and 2100 West Alexis Rd., Ste. B-2, Toledo, Ohio.  Nat Lab was enrolled as a participating provider with Medicare and submitted claims to Medicare.

## The Tri-County Network Massage Therapy and Healthcare Management Company

28.     Tri-County Wellness, Inc. ("Tri-County Wellness") was a Michigan corporation doing business at 3031 W. Grand Blvd., Ste. 506, Detroit, Michigan and 900 Wilshire Dr., Ste. 202, Troy, Michigan.

## Defendants and Other Entities and Individuals

29.     Defendant **MASHIYAT RASHID**, a resident of Oakland County, was the CEO of Tri-County Wellness and controlled, owned, or operated Global Quality,

Aqua Therapy, Tri-County Physicians, Tri-State Physicians, New Center Medical, National Laboratories, Nat Lab, collectively referred to as the Tri-County Network.

30.     Defendant **SPILIOS PAPPAS**, a resident of Lucas County, Ohio, was a physician licensed in the State of Michigan who was enrolled as a participating provider with Medicare for Tri-County Physicians and Tri-State Physicians.

31.     Defendant **TARIQ OMAR**, a resident of Oakland County, was a physician licensed in the State of Michigan who was enrolled as a participating provider with Medicare for Tri-County Physicians.

32.     Defendant **MOHAMMED ZAHOOR**, a resident of Oakland County, was a physician licensed in the State of Michigan who was enrolled as a participating provider with Medicare for Tri-County Physicians and Tri-State Physicians.

33.     Defendant **JOSEPH BETRO**, a resident of Oakland County, was a physician licensed in the State of Michigan who was enrolled as a participating provider with Medicare for Tri-County Physicians and New Center Medical.

34.     Yasser Mozeb, a resident of Oakland County, was the office manager of various companies owned or controlled by **MASHIYAT RASHID**.

35.     Abdul Haq, a resident of Washtenaw County, was a physician licensed in the State of Michigan who was enrolled as a participating provider with Medicare for Aqua Therapy, Tri-County Physicians and Tri-State Physicians.

36.     US Home Health Care Inc. ("US Home"), Senior Link Home Care, Inc. ("Senior Link Home Care"), and Vitality Home Care, Inc. ("Vitality Home Care"), were home health companies in Wayne and Oakland Counties that were enrolled as participating providers with Medicare.

37.     Pro Med Management, Inc. ("Pro Med"), was a management company in Wayne County.

38.     Tasadaq Ali Ahmad, a resident of Oakland County, controlled, owned, or operated US Home and Pro Med.

## COUNT 1
### (18 U.S.C. § 1349—Conspiracy to Commit Health Care Fraud and Wire Fraud)
### D-1 MASHIYAT RASHID
### D-3 SPILIOS PAPPAS, MD
### D-5 JOSEPH BETRO, DO
### D-6 TARIQ OMAR, MD
### D-7 MOHAMMED ZAHOOR, MD

39.     Paragraphs 1 through 38 of the General Allegations section of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

40.     From in or around December 2008, and continuing through in or around the Present, the exact dates being unknown to the Grand Jury, in Wayne County, the Eastern District of Michigan, and elsewhere, the defendants, **MASHIYAT RASHID, SPILIOS PAPPAS, JOSEPH BETRO, TARIQ OMAR**, and **MOHAMMED ZAHOOR**, did willfully and knowingly, combine, conspire,

12

confederate, and agree with each other, and others known and unknown to the Grand Jury, to commit certain offenses against the United States, namely:

(a)    to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

(b)    to knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

41.     It was a purpose of the conspiracy for defendants **MASHIYAT RASHID, SPILIOS PAPPAS, JOSEPH BETRO, TARIQ OMAR**, and **MOHAMMED ZAHOOR**, along with Yasser Mozeb, Abdul Haq, and other co-conspirators to unlawfully enrich themselves by, among other things:  (a) submitting or causing the submission of false and fraudulent claims to Medicare for claims based on kickbacks and bribes; (b) submitting or causing the submission of false and fraudulent claims to Medicare for services that were (i) medically unnecessary; (ii) not eligible for Medicare reimbursement; and/or (iii) not provided as represented; (c) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

### Manner and Means

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

42.     **MASHIYAT RASHID, SPILIOS PAPPAS, JOSEPH BETRO, TARIQ OMAR, MOHAMMED ZAHOOR**, and others falsely certified to Medicare that they, and/or each group clinic or practice in the Tri-County Network that they certified on behalf of, would comply with all Medicare rules and

14

regulations, and federal laws, including that they would not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare and that they would refrain from violating the federal Anti-Kickback statute.

43.     **MASHIYAT RASHID** and his coconspirators obtained access to thousands of Medicare beneficiaries through the following unlawful practices:

a.     **SPILIOS PAPPAS, TARIQ OMAR, JOSEPH BETRO, MOHAMMED ZAHOOR**, Abdul Haq, and others would prescribe in excess of 4.2 million dosage units of controlled substances, including medically unnecessary prescriptions for Oxycodone, Hydrocodone, and Oxymorphone, to Tri-County Network beneficiaries, some of whom were addicted to opioids.  Some of these medically unnecessary opioids were resold on the street.

b.     **MASHIYAT RASHID** and others paid or caused the payment of illegal kickbacks and bribes to (i) Medicare beneficiaries; and (ii) recruiters, physicians, and others to refer Medicare beneficiaries to, or order testing by, the Tri-County Network.

44.     **MASHIYAT RASHID, SPILIOS PAPPAS, JOSEPH BETRO, TARIQ OMAR, MOHAMMED ZAHOOR**, Yasser Mozeb, Abdul Haq, and others would require vulnerable Medicare beneficiaries, including those addicted to opioids, to submit to expensive injections before prescribing opioids and other controlled substances, even though the injections were medically unnecessary,

sometimes painful, not eligible for Medicare reimbursement, and/or not provided as represented.

45.     **MASHIYAT RASHID** sought to "make $$ on volume" or "max out" reimbursement for injections and other services or testing, regardless of medical necessity; paid or caused payments to be made to **SPILIOS PAPPAS, JOSEPH BETRO, TARIQ OMAR, MOHAMMED ZAHOOR**, Abdul Haq, and others based on the volume and value of certain services that each billed or caused to be billed by the Tri-County Network; and **SPILIOS PAPPAS, JOSEPH BETRO, TARIQ OMAR, MOHAMMED ZAHOOR**, Abdul Haq, and others would conduct repetitive and unnecessary injections, including administering dozens of injections on numerous individual beneficiaries in a single year, and submit or cause the submission of other false and fraudulent claims to Medicare in order to increase revenue for **MASHIYAT RASHID**, themselves, and their co-conspirators.

46.     **MASHIYAT RASHID, SPILIOS PAPPAS, JOSEPH BETRO, TARIQ OMAR, MOHAMMED ZAHOOR**, Yasser Mozeb, Abdul Haq, and others (a) referred or caused the referral of Medicare beneficiaries for home health and other services to providers specified by **MASHIYAT RASHID** and/or (b) arranged for, ordered, or caused the arranging for or ordering of urine drug testing, ultrasounds, nerve conduction, MRI's, and other testing by providers specified by **MASHIYAT RASHID**, which were procured by the payment of kickbacks and

bribes, medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented.

47.    **MASHIYAT RASHID** and others solicited illegal kickbacks and bribes from US Home, Vitality, Senior Link, Laboratory 1, and other providers for **SPILIOS PAPPAS**, **JOSEPH BETRO**, **TARIQ OMAR**, **MOHAMMED ZAHOOR**, Abdul Haq, and others to cause the referrals and/or ordering of testing described above in Paragraph 46.

48.    **MASHIYAT RASHID**, **SPILIOS PAPPAS**, **JOSEPH BETRO**, **TARIQ OMAR**, **MOHAMMED ZAHOOR**, Yasser Mozeb, Abdul Haq, and others, falsified, fabricated, altered, and caused the falsification, fabrication, and alteration of medical records, including patient files, home health certifications, treatment plans, diagnostic testing orders, and other records, including provider questionnaires and other responses to Medicare reviews of claims for services and testing, all to support claims for office visits, injections, home health services, urine drug testing, diagnostic testing, nerve conduction studies, ultrasounds, MRI's, and other services that were obtained through illegal kickbacks and bribes, medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented.

49.    **MASHIYAT RASHID**, **SPILIOS PAPPAS**, Abdul Haq, and others, through the use of interstate wires, concealed **MASHIYAT RASHID**'s illegal

17

ownership of the Tri-County Network Physician Companies and involvement in the scheme by submitting or causing the submission of false and fraudulent enrollment materials to Medicare that failed to disclose the ownership interest and/or managing control of **MASHIYAT RASHID**.

50.     **MASHIYAT RASHID, SPILIOS PAPPAS**, Abdul Haq, and others disguised **MASHIYAT RASHID**'s ownership interest and/or control over these provider numbers by, among other things, entering into sham agreements and making misrepresentations and omissions in the enrollment applications and claims submitted to Medicare.

51.     **MASHIYAT RASHID, SPILIOS PAPPAS, JOSEPH BETRO, TARIQ OMAR, MOHAMMED ZAHOOR**, and others facilitated and concealed the scheme, and obstructed investigations, enrollment suspensions, and overpayment demands by the Program Safeguard Contractor, ZPIC, and other law enforcement agencies by (a) making false statements and submitting or causing the submission of falsified documentation; and (b) after the Program Safeguard Contractor or ZPIC determined that 100% of the claims by Global Quality and Tri-County Physicians, and 95% of the claims submitted by National Laboratories, were not eligible for Medicare reimbursement, creating new companies, obtaining Medicare billing privileges, and submitting or causing the submission of false and fraudulent claims through these new companies, in some instances changing only the name of the

company on the door to the medical practice and/or inventing new suite numbers to conceal the continuation of the fraudulent practices at the same location.

52.     **MASHIYAT RASHID, SPILIOS PAPPAS, JOSEPH BETRO, TARIQ OMAR, MOHAMMED ZAHOOR**, and others submitted and caused the submission of false and fraudulent claims through interstate wire to Medicare in an amount in excess of approximately $150 million for services and testing that were obtained through illegal kickbacks and bribes, medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented.

53.     **MASHIYAT RASHID** would transfer the proceeds derived from the conspiracy to live an extravagant lifestyle and spend millions of dollars on luxury clothes from retailers like Hermes, rare Richard Mille watches, and exotic automobiles such as a Lamborghini and Rolls Royce Ghost; a mansion and other real estate in the Detroit, Michigan area; and to sit courtside or in the first row of NBA basketball games, including the NBA Finals.

## COUNTS 2-4
### (18 U.S.C. §§ 1347 and 2 – Health Care Fraud)
### D-1 MASHIYAT RASHID
### D-3 SPILIOS PAPPAS, MD
### D-5 JOSEPH BETRO, DO
### D-6 TARIQ OMAR, MD
### D-7 MOHAMMED ZAHOOR, MD

54.     Paragraphs 1 through 38 of the General Allegations section of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.  On or about the dates enumerated below, in Wayne County, the Eastern District of Michigan, and elsewhere, **MASHIYAT RASHID**, **SPILIOS PAPPAS**, **TARIQ OMAR**, and **MOHAMMED ZAHOOR**, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Scheme and Artifice

55.     It was the purpose of the scheme and artifice for **MASHIYAT RASHID**, **SPILIOS PAPPAS**, **JOSEPH BETRO**, **TARIQ OMAR**, and **MOHAMMED ZAHOOR** to unlawfully enrich themselves and their accomplices

by, among other things:  (a) submitting or causing the submission of false and fraudulent claims to Medicare for claims based on kickbacks and bribes; (b) submitting or causing the submission of false and fraudulent claims to Medicare for services that were (i) medically unnecessary; (ii) not eligible for Medicare reimbursement; and/or (iii) not provided as represented; (c) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their accomplices.

### The Scheme and Artifice

56.    Paragraphs 41 through 53 of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

### Acts in Execution of the Scheme and Artifice

57.    On or about the dates specified below, in Wayne County, the Eastern District of Michigan, and elsewhere, **MASHIYAT RASHID, SPILIOS PAPPAS, JOSEPH BETRO, TARIQ OMAR,** and **MOHAMMED ZAHOOR,** in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain, by means of materially false and

fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program:

| Count Defendant(s) | Medicare Beneficiary | Approximate Date of Service | Description of Items Billed | Approximate Amount Billed to Medicare |
|---|---|---|---|---|
| 2 RASHID PAPPAS | B.J. | 12/17/2015 | Facet Joint Injections | $1,180.00 |
| 3 RASHID BETRO | A.P. | 12/30/2015 | Facet Joint Injections | $1,030.00 |
| 4 RASHID OMAR | C.W. | 12/16/2014 | Facet Joint Injections | $1,150.00 |
| 5 RASHID ZAHOOR | T.S. | 12/4/2014 | Facet Joint Injections | $1,150.00 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 6
### (18 U.S.C. § 371—Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks)
### D-1 MASHIYAT RASHID

58.     Paragraphs 1 through 38 of the General Allegations section and Paragraphs 41 to 53 of the Manner and Means section of Count 1 of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

22

59.     From in or around December 2008, and continuing through in or around the Present, the exact dates being unknown to the Grand Jury, in Wayne County, the Eastern District of Michigan, and elsewhere, the defendant, **MASHIYAT RASHID** and others did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with Yasser Mozeb, Tasadaq Ali Ahmad, each other, and others known and unknown to the Grand Jury:

a.      to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare and Medicaid programs, in violation of Title 18, United States Code, Section 371, and to commit certain offenses against the United States, that is;

b.      to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A)-(B), by knowingly and willfully offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind to any person to induce such person: (i) to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare; and (ii) to purchase, lease, order, or arrange for or recommend purchasing, leasing,

or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, that is, Medicare; and

      c.     to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A), by knowingly and willfully soliciting and receiving remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind: (i) in return for referring an individual to a person for the furnishing and arranging for the furnishing of an item and service for which payment may be made in whole and in part under a federal health care program, that is, Medicare; or (ii) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program.

### Purpose of the Conspiracy

      60.    It was a purpose of the conspiracy for **MASHIYAT RASHID** and his co-conspirators, to unlawfully enrich themselves by: (1) offering, paying, soliciting, and receiving kickbacks and bribes to ensure that (a) Medicare beneficiaries would serve as patients in the Tri-County Network and in US Home, Senior Link, Vitality, Laboratory 1, and other co-conspirator providers; (b) recruiters, physicians, and others would order, or arranging for or recommend the ordering of services or testing by Tri-County Network, Laboratory 1, and other co-conspirator providers; and (2) submitting or causing the submission of claims to Medicare for medical items,

testing, and services purportedly provided to these recruited beneficiaries.

## Manner and Means

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

61.    Paragraphs 41 to 53 of the Manner and Means section of Count 1 of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

## Overt Acts

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed in Wayne County, the Eastern District of Michigan, and elsewhere, at least one of the following overt acts, among others:

62.    **MASHIYAT RASHID** and others paid or caused the payment of illegal kickbacks and bribes to (i) recruiters, physicians, and others to refer Medicare beneficiaries to, or order testing by, the Tri-County Network; and (ii) Medicare beneficiaries in exchange for visiting the Tri-County Network and/or providing signatures on documents reflecting services purportedly performed by the Tri-County Network.

63.    **MASHIYAT RASHID** and others solicited illegal kickbacks and

bribes from US Home, Vitality, Senior Link, Laboratory 1, and other providers for **SPILIOS PAPPAS, JOSEPH BETRO, TARIQ OMAR, MOHAMMED ZAHOOR**, Abdul Haq, and others to cause the referrals and/or ordering of testing described above in Paragraph 46.

64.    **MASHIYAT RASHID**, Yasser Mozeb, and others negotiated, calculated, and/or reconciled payments for illegal kickbacks and bribes, including by tracking referrals and exchanging spreadsheets by email with the owners, managers, and employees of Laboratory 1 beginning in or around May 2012, and with employees of US Home on or about May 6, 2014, July 8, 2015, and other dates.

65.    On or about December 1, 2014, **MASHIYAT RASHID** caused Pro Med Management, Inc., to cash check 1279, in the approximate amount of $5,310, from Tri-County Wellness's bank account ending in x9562.

66.    On or about February 5, 2016, **MASHIYAT RASHID** caused check number 17786 from US Home's bank account, in the approximate amount of $9,379.36, to be deposited into Tri-County Wellness's bank account ending in x4737.

All in violation of Title 18, United States Code, Section 371 and Title 18, United States Code, Section 2.

## COUNT 7
### (42 U.S.C. § 1320a-7b(b)(1)(A)) – Receipt of Kickbacks in Connection with a Federal Health Care Program)
### D-1 MASHIYAT RASHID

67.     Paragraphs 1 through 38 of the General Allegations section and Paragraphs 41 to 53 of the Manner and Means section of Count 1 of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

68.     On or about the date set forth below, in Wayne County, the Eastern District of Michigan, and elsewhere, **MASHIYAT RASHID** did knowingly and willfully solicit and receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check, as set forth below, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a federal health care program, that is, Medicare and Medicaid, as set forth below:

| Count Defendant | Approximate Date of Payment | Description | Approximate Amount |
|---|---|---|---|
| 6 RASHID | February 5, 2016 | Check No. 17786 from US Home | $9,379.36 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A) and Title 18, United States Code, Section 2.

## COUNT 8
### (42 U.S.C. §§ 1320a-7b(b)(2)(A)-(B)) — Payment of Kickbacks in Connection with a Federal Health Care Program)
### D-1 MASHIYAT RASHID

69.　Paragraphs 1 through 38 of the General Allegations section and Paragraphs 41 to 53 of the Manner and Means section of Count 1 of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

70.　On or about the date set forth below, in Wayne County, the Eastern District of Michigan, and elsewhere, **MASHIYAT RASHID** did knowingly and willfully offer and pay remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check, as set forth below, to any person to induce such person: (a) to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare; and (b) to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, facility, service and item for which payment may be made in whole or in part under a Federal health care program, that is, Medicare, as set forth below:

28

| Count Defendant | Approximate Date of Payment | Description | Approximate Amount |
|---|---|---|---|
| 7 RASHID | December 1, 2014 | Check No. 1279 from Tri County Wellness bank account x9562 | $5,310.00 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A)-(B) and Title 18, United States Code, Section 2.

## COUNT 9
### (18 U.S.C. §§ 1957 and 2—Money Laundering)
### D-1 MASHIYAT RASHID

71.    On or about the date set forth below, in Wayne County, the Eastern District of Michigan, and elsewhere, **MASHIYAT RASHID**, did knowingly engage and attempt to engage in the following monetary transactions by through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, the payment of funds, such property having been derived from a specified unlawful activity, that is, health care fraud.

| COUNT | DEFENDANT | DATE | TRANSACTION |
|---|---|---|---|
| 8 | MASHIYAT RASHID | April 13, 2016 | $6,600,000 wire transfer to account x4026 |
| 9 | MASHIYAT RASHID | July 10, 2017 | $500,000 cash withdrawal from account x8653 |

In violation of Title 18, United States Codes, Sections 1957 and 2.

## FORFEITURE ALLEGATIONS
**(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461; 18 U.S.C. §§982(a)(1) and (7) – Criminal Forfeiture)**

72.     The allegations contained in Count 1-9 of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture against defendants **MASHIYAT RASHID**, **SPILIOS PAPPAS**, **JOSEPH BETRO**, **TARIQ OMAR**, and **MOHAMMED ZAHOOR** pursuant to Title 18, United States Code, Sections 981 and 982, and Title 28, United States Code, Section 2461.

73.     Pursuant to Title 18, United States Code, Section 981(a)(1)(C), together with Title 28, United States Code, Section 2461, upon being convicted of the crime charged in Count 1 of this Superseding Indictment, the convicted defendant(s) shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense.

74.     Pursuant to Title 18, United States Code, Section 982(a)(7), upon being convicted of the crimes charged in Counts 1 through 7 of this Superseding Indictment, the convicted defendant(s) shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

75.     Pursuant to Title 18, United States Code, Section 982(a)(1), upon being convicted of the crime charged in Counts 8-9 of this Superseding Indictment, the convicted defendant shall forfeit to the United States any property, real or personal, involved in the offense, or any property traceable to such property.

76.     Money Judgment:  Property subject to forfeiture includes, but is not limited to a forfeiture money judgment equal to:

a.      At least $150,000,000 in United States currency, in the aggregate, or such amount as is proved in this matter, representing the total amount of proceeds and/or gross proceeds obtained as a result of each defendants' violations as alleged in Counts 1-7 of this Superseding Indictment;

b.      At least $6,600,000.00 in United States currency, or such amount as is proved in this matter, representing the total amount involved in, or traceable to the amount involved in, the defendant's violation as alleged in Count 8 of this Superseding Indictment.

c.      At least $500,000.00 in United States currency, or such amount as is proved in this matter, representing the total amount involved in, or traceable to the amount involved in, the defendant's violation as alleged in Count 9 of this Superseding Indictment.

77.   <u>Substitute Assets</u>:  If the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b) and/or Title 28, United States Code, Section 2461, to seek to forfeit any other property of **MASHIYAT RASHID, SPILIOS PAPPAS, JOSEPH BETRO, TARIQ OMAR,** and **MOHAMMED ZAHOOR** up to the value of such property.


MATTHEW SCHNEIDER
United States Attorney

<u>s/REGINA R. MCCULLOUGH</u>
Regina R. McCullough
Chief, Health Care Fraud Unit
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9618
Regna.McCullough@usdoj.gov

s/MALISA DUBAL
MALISA DUBAL
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9616
Malisa.dubal@usdoj.gov

s/THOMAS TYNAN
THOMAS TYNAN
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20005
(202) 768-1136
Thomas.tynan@usdoj.gov


Date: January 2, 2020

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | **Case Number**<br>17-cr-20465 |
|---|---|---|

**NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.**

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** |
| ☐ Yes ☒ No | **AUSA's Initials:** |

**Case Title:** USA v.  Mashiyat Rashid, et al

FILED USDC - CLRK DET
2020 JAN 2 PM 3:15

**County where offense occurred :**  Oakland County, Wayne County

**Check One:**    ☒ Felony          ☐ Misdemeanor          ☐ Petty

____Indictment/____Information ---  **no** prior complaint.
____Indictment/____Information ---  based upon prior complaint [Case number:                    ]
__✓_Indictment/____Information ---  based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** 17-cr-20465                              **Judge:**  Hon. Denise Page Hood

☒ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| Mashiyat Rashid, Spilios Pappas<br>Joseph Betro, Traiq Omar,<br>Mohammed Zahoor | 18 U.S.C. § 1349, 18 U.S.<br>C. § 1347,18 U.S.C. §<br>371, 18 U.S.C. § 1957<br>and 2 | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

January 2, 2020
Date

Thomas Tynan, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: (202) 768-1136
Fax:    (313) 226 - 0816
E-Mail address: Thomas.tynan@usdoj.gov
Attorney Bar #: DC-998297, VA-77420

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.